IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Makhmud Badalov, | : | |
| | : | Case No. 1:26-cv-162 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Amended Habeas |
| Kristi Noem in her Official Capacity as | : | Petition and Denying as Moot Motion to |
| Secretary of U.S. Department of | : | Dismiss |
| Homeland Security, *et al.*, | : | |
| | : | |
| Respondents. | : | |

This matter is before the Court on the First Amended Petition for Writ of Habeas Corpus ("Amended Habeas Petition") filed by Petitioner Makhmud Badalov, a native and citizen of Russia. (Doc. 10.) Badalov challenges his detention at the Butler County, Ohio Jail in the custody of Respondents, including the United States Immigration and Customs Enforcement ("ICE"). He argues that he is being unlawfully held and denied a constitutionally adequate custody redetermination hearing—a bond hearing—in a misapplication of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b) and 1226(a). The Court holds here that Badalov, who was detained after entering the United States, released and paroled, and then re-detained about four years later, is entitled to a bond hearing under § 1226(a). Badalov's continued detention without a bond hearing violates the INA and his due process rights.

Also pending before the Court is the Motion to Dismiss filed by the Butler County, Ohio Sheriff. (Doc. 4.) For the reasons that follow, the Court will **GRANT** the Amended Habeas Petition and **DENY AS MOOT** the Motion to Dismiss.

1

## I. BACKGROUND

### A. Factual History

Badalov entered the United States from Mexico without being inspected by an immigration officer at a designated port of entry on or about May 25, 2022.  (Doc. 11-2 at PageID 229.)  He was taken into custody in the area of El, Paso Texas by a U.S. Border Patrol agent that same day.  (*Id.* at PageID 228–229.)  The Department of Homeland Security ("DHS") determined that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he was not in possession of a valid entry document.  (*Id.* at PageID 229.)  DHS began the process for expedited removal under 8 U.S.C. § 1225(b)(1) and referred him to the asylum office after he expressed fear of returning to Russia.  (*Id.* at PageID 230.)  Border Patrol then transferred him to ICE custody for his immigration proceedings.  (*Id.*)

ICE determined to parole Badalov on May 27, 2022 for one year under 8 U.S.C. § 1182(d)(5)(A).  (Doc. 11-3 at PageID 231.)  The Interim Notice of Parole stated that his parole authorization would "automatically terminate . .  at the end of the one-year period unless ICE provides you with an extension."  (*Id.*)  As there is no evidence or assertion that the one-year term of parole was extended, his parole terminated on May 27, 2023.

On August 31, 2023, after his term of parole ended, Badalov filed an Application for Asylum.  (Doc. 10 at PageID 112; Doc. 11 at PageID 208.)  That Application remains pending. At some point, Badalov received a work permit and a social security number, and he worked as a truck driver.  (Doc. 10 at PageID 112.)

ICE took Badalov back into custody on February 9, 2026 during an ICE check-in appointment.  (Doc. 11-4 at PageID 232.)  ICE provided Badalov with a Notice to Appear dated February 20, 2026 directing him to appear before an Immigration Judge on May 12, 2026 in

Cleveland, Ohio for proceedings under 8 U.S.C. § 1229(a)(1). (Doc. 11-1 at PageID 224–225.)

On the Notice to Appear form, DHS checked the box stating that Badalov was "an alien present

in the United States who has not been admitted or paroled." (*Id.*) DHS did not check the two

alternative boxes stating that he was "an arriving alien" or that he had been "admitted to the

United States, but [was] removable for the reasons stated below." (*Id.*) DHS made the following

allegations:

> 1. You are not a citizen or national of the United States;
>
> 2. You are a native of RUSSIA and a citizen of RUSSIA;
>
> 3. You arrived in the United States at or near El Paso, Texas, on or about May 25, 2022;
>
> 4. At that time you arrived at a time or place other than as designated by the Attorney General.
>
> 5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or
>
> 6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(*Id.* at PageID 224, 227.) DHS charged Badalov with being an alien present in the United States

without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i) and with entering

the United States without valid required entry, identification, and nationality documentation in

violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.* at PageID 227.) Immigration hearings were

scheduled for March 10, 2026 and March 16, 2026. (Docs. 11-5, 11-6.) The Assistant United

States Attorney asserts that Badalov admitted the factual allegations and conceded the charge of

removability at the March 10, 2026 hearing. (Doc. 11 at PageID 208.)

**B.    Procedural Posture**

Badalov initiated these proceedings on February 16, 2026 and then filed the Amended

3

Habeas Petition on February 25, 2026.  He named as Respondents Kristi Noem in her official capacity as the Secretary of DHS, Kevin Raycraft in his official capacity as the Director of the Detroit Field Office of ICE's Enforcement and Removal Operations division, and Richard Jones in his official capacity as the Butler County, Ohio Sheriff.  (Doc. 10 at PageID 113–114.)  The Butler County Sheriff has filed an unopposed Motion to Dismiss, (Doc. 4), so the use of the term Respondents hereafter refers only to the federal Respondents.  Badalov alleges that his detention is unlawful and that he is entitled to custody redetermination hearing—a bond hearing—under 8 U.S.C. § 1126(a) and the Due Process Clause of the Fifth Amendment.  (Doc. 10 at 125–127.)[1]

Respondents filed a Return of Writ denying that Badalov is entitled to relief.  (Doc. 11.) They assert that the Court lacks jurisdiction because Badalov failed to exhaust his administrative remedies.  (*Id.* at PageID 209–213.)  They also assert that he is not entitled to a bond hearing under the INA or the Due Process Clause because he was initially detained for expedited removal proceedings under 8 U.S.C. § 1225(b)(1).  (*Id.* at PageID 214–222).  Badalov then filed a Reply.  (Doc. 14).

## II.    LAW AND ANALYSIS

### A.    Exhaustion

Respondents contend that the Amended Habeas Petition should be dismissed because Badalov did not first exhaust his administrative remedies.  Badalov has not made a formal request for a bond hearing to the Immigration Judge.  He asserts that administrative exhaustion is not mandatory and should not be required here.

The Court starts its analysis by recognizing that Immigration Judges are refusing to provide custody redetermination hearings—bond hearings—on the authority of *Matter of Yajure*

---

[1]  Badalov initially alleges that he was taken into custody without notice or explanation for why his parole was revoked.  (*Id.* at PageID 117–121, 124.)  But he seems to abandon that argument in his Reply brief wherein his attorney argues that his overstaying his grant of parole was akin to overstaying his visa.  (Doc. 14 at PageID 267.)

*Hurtado*, 29 I&N Dec. 216, 220, 229 (BIA Sept. 5, 2025).  In that case, the Board of

Immigration Appeals ("BIA") held that noncitizens who are present in the United States without

admission are subject to mandatory detention under 8 U.S.C. § 1225(b), without eligibility for

bond, during the duration of their removal proceedings.  *Id.* at 220, 229.  For the reasons below,

the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas

corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain

such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by

statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).  The decision to require exhaustion is

within the discretion of the district court when it is not mandated by statute.  *Velasco-Sanchez v.

Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at \*5 (E.D. Mich. Dec. 11, 2025) (citing

*McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a

noncitizen seeks habeas review to challenge pre-removal detention."  *Salvador F.-G. v. Noem*,

No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at \*6 (N.D. Okla. June 12, 2025).  Courts within

the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California

Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g.*, *Lopez-

Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025).  Under that test, courts may

require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper
> record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the
> administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes
> and to preclude the need for judicial review.

*Id*.  These factors weigh against imposing prudential exhaustion here.  Statutory interpretation issues are properly addressed by federal courts.  Also, to the extent that Badalov has raised a due process challenge to his continued detention without a bond hearing, exhaustion is not appropriate because the BIA cannot review such constitutional challenges.  *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement.  Requiring exhaustion in this case would very likely subject Badalov to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve.  *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship.") (citation omitted).  Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here.  By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Badalov presents to this Court.  Respondents do not contend that the BIA is likely to reverse course on its *Matter of Yajure Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion was not required for Badalov to bring this action.

**B.      Detention under the INA**

The Court turns now to the merits of the Amended Habeas Petition.  Badalov argues that his detention is governed by 8 U.S.C. § 1226(a) and that he is entitled to a custody redetermination hearing—a bond hearing.  Respondents contend that Badalov's detention is governed by 8 U.S.C. § 1225(b)(1) and that he is not entitled to a bond hearing.  As explained

below, the Court is persuaded that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez v. Raycraft*, No. 1:26-cv-69, — F.Supp.3d—, 2026 WL 456065, at *3 (S.D. Ohio Feb. 18, 2026).

Detention is not mandatory under 8 U.S.C. § 1226(a) because of the statute's use of the term "may." Section 1226(a) provides that "an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). The Immigration Judge then "evaluates whether there is a risk of nonappearance or danger to the community." *Lopez-Campos*, 797 F.Supp.3d at 777. The Supreme Court has explained, albeit in dicta, that § 1226(a) generally applies to give Government discretion "to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added).

Respondents argue that because Badalov was initially detained under 8 U.S.C. § 1225(b)(1)(B)(ii) for expedited removal proceedings, he is still subject to mandatory detention under that provision even after being released on parole. The Supreme Court in *Jennings* described the initial process under which Badalov was detained:

> Aliens covered by § 1225(b)(1) are normally ordered removed "without further
> hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i).

7

> But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

*Jennings*, 583 U.S. at 287.  An exception to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) is that DHS can parole a detainee for "urgent humanitarian reasons or significant public benefit."  *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)).  "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Here, Respondents do not assert that they revoked Badalov's parole, nor is there evidence to that effect.  Rather, by the terms of Interim Notice Authorizing Parole, Badalov's parole expired on May 27, 2023, two years before ICE took him back into custody.  (Doc. 11-3 at PageID 231.)  Whether or not § 1182(d)(5)(A) authorizes DHS to take a noncitizen back into detention when their parole expires, "there is nothing in this text that affirmatively authorizes indefinite detention."  *Forys v. Raycraft*, No. 1:26-CV-149, 2026 WL 516951, at *2 (W.D. Mich. Feb. 25, 2026) (cleaned up).

Respondents cite *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972 (D. Vt. Dec. 11, 2025), for the proposition that Badalov's status reverted to that of an applicant for admission under § 1225(b)(1) when his parole expired.  That case, however, does not support their contention.  The court in *Walizada* declined to resolve whether a noncitizen taken into custody after his parole had expired—and four years after he first entered the United States—was subject to mandatory detention under 8 U.S.C. § 1225(b)(1) as an "arriving alien."  *Id.* at *2–3, 15.  The court instead held that Walizada had a due process right to an individualized bond hearing.  *Id.* at *22.

The Court finds *Rafibaev v. Noem*, No. 26-CV-00461, 2026 WL 607559 (D. Colo. Mar. 4, 2026), to be more persuasive.  The district court in *Rafibaev* held that a noncitizen who was re-detained by ICE almost two years he had entered the United States, and after his parole had expired, was entitled to a bond hearing under 8 U.S.C. § 1226(a).  *Id.* at *1, 4–5.  The *Rafibaev* court suggested that it did not make sense to hold that a noncitizen who had been in the country for two years was subject to mandatory detention under § 1225(b)(1) because that provision only applies to noncitizens who are "arriving" in the United States.  *Id.* at *4; *cf.*, *e.g.*, *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (stating that a noncitizen whose parole terminates "is not reverted by operation of law to status as an arriving alien" and that their re-detention "must be conducted under the discretionary framework of Section 1226(a)"); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (holding "that neither § 1225(b)(1)(A)(i) nor § 1225(b)(1)(A)(iii)(II) authorize expedited removal of noncitizens who have been paroled into the United States, regardless of the status of that parole").  This Court agrees.  Mandatory detention under § 1225(b)(1) applies only to arriving aliens.  Because Badalov has been living in the United States since May 2022, his detention is governed by § 1226(a).

This conclusion is also consistent with how DHS classified Badalov when they re-detained him.  After Badalov was taken into custody, DHS issued a Notice to Appear and checked the box charging him with being "an alien *present* in the United States *who has not been admitted or paroled*." (Doc. 11-1 at PageID 224) (emphasis added).)  It did not check the box for the alternative option of charging him with being "an arriving alien." (*Id.*)  DHS stated that he would be processed under 8 U.S.C. § 1229(a)(1), not under the expedited removal process of 8 U.S.C. § 1225(b)(1). (*Id.* at PageID 225.)  It is inconsistent and strains credulity for

9

Respondents to suggest that the two potential charges—arriving alien and alien present without being admitted or paroled—are categorically the same when the Notice to Appear form treats them as alternative and distinct categories. *See Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *5–6 (N.D. Ill. Oct. 24, 2025) ("The manner in which the boxes were checked on Patel's NTA shows that the Government determined that Patel was detained under Section 1226(a)—not under Section 1225(b)(2)—because Section 1225(b)(2)(A) would correspond to those 'arriving' while Section 1226(a) would correspond to those 'present.'") (cleaned up).  The Court holds that Respondents are violating the INA by purporting to hold Badalov subject to mandatory detention under § 1225(b)(1).

**C.      Due Process**

Badalov also alleges that the failure to provide him with a bond hearing violates his due process rights.  Respondents' primary defense is that due process does not require a bond hearing for a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(1).  It argues that under Supreme Court precedent a noncitizen seeking initial entry into the country has "only those [due process] rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020).  That defense fails at the onset because the Court has held that Badalov's detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by § 1225(b)(1).  This Court's holding is consistent with *Thuraissigiam* insofar as the Supreme Court also noted that noncitizens "who have established connections in this country have due process rights in deportation proceedings." *Id.* at 107.

This Court is persuaded that detaining Badalov under § 1225(b)(1) deprived him—and continues to deprive him—of due process rights under the Fifth Amendment.  "Non-punitive detention in the immigration context violates the Due Process Clause, absent adequate

10

procedural protections or a special justification outweighing a petitioner's liberty interest."
*Ortiz Gutierrez*, 2026 WL 456065, at *4 (cleaned up).  As such, "detention [under § 1226(a)] is discretionary and constitutionally constrained by due process." *Id*. (citation omitted).  The Court finds that Respondents violated Badalov's due process rights by enforcing mandatory detention under § 1225(b)(1).  The Court thus turns to the matter of what process is due to Badalov.

Courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of the process in the context of civil immigration detention.  *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali v. Raycraft*, No. 1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026).  *Mathews* instructs the Court to consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.  424 U.S. at 335.  Two of the three factors favor Badalov.

The first *Mathews* factor, the private interest that will be affected by the official action, strongly favors Badalov.  As noted above, at the heart of the Fifth Amendment is the right to be free from deprivation of liberty, and his liberty is at stake.  Badalov has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According the record, Badalov is married and is employed as a truck driver. (Doc. 11-4 at PageID 233–234.)  He has a pending request for asylum.  And Respondents created a liberty interest when they "granted him parole." *Azalyar v. Raycraft*, No. 1:25-CV-916, 2026 WL 30741, at *4 (S.D. Ohio Jan. 2, 2026).  Badalov's detention without a bond hearing impinges on his liberty.

The second factor also favors Badalov.  An individualized bond redetermination hearing

provides a mechanism for the Immigration Judge to determine whether Badalov poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of his right not to be deprived of liberty without due process.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 785.  Finally, the last factor is neutral.  The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Badalov is necessary to further the Government's interest.  The Government has not showed that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.

In sum, two of the three *Mathews* factors favor Badalov and compel this Court to hold that his continued detention under § 1225(b)(2)(A) violates his Fifth Amendment right to due process.  *See Urrutia-Diaz*, 2025 WL 3689158, at *7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar v. Noem*, No. 4:25-cv-00137-GNS, 2025 WL 3231630, at *6–7 (W.D. Ky. Nov. 19, 2025) (all three factors favor the petitioner); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 503–506 (S.D.N.Y. 2025) (addressing due process claim); *see also Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 491–496 (S.D.N.Y. 2025) (discussing due process and *Mathews*); *Lopez-Campos*, 797 F.Supp.3d at 784–85 (applying *Mathews*); *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080, at *8 (N.D. Ohio Nov. 14, 2025) (summary conclusion of due process violation and collecting cases).

The Court holds that imposing mandatory detention upon Badalov under 8 U.S.C. § 1225(b)(1) without a bond hearing violates Badalov's due process rights.

**D.      Attorney Fees and Costs**

Badalov seeks attorney fees and costs.  (Doc. 10 at PageID 128.)   The Equal Access to Justice Act permits a court to award "reasonable fees and expenses of attorneys, in addition to

costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(b).  The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules.

## III.  CONCLUSION

For the reasons stated above, the Court **FINDS** that Badalov is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining him without a bond hearing violates his statutory rights and due process rights under the Fifth Amendment.  The Court **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Badalov with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Badalov from custody.  If Respondents choose to provide a bond hearing in lieu of releasing Badalov from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.  *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No. 1:25-CV-1704, — F. Supp. 3d —, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21,

13

2026); *Azalyar, v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741,

at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to

detention can reasonably address the Government's interest, as well as

Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No.

25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file

a report informing the Court whether and when a due process compliant, bond redetermination

hearing was held or whether and when Badalov was released from custody.

Finally, the Butler County Sheriff's Motion to Dismiss (Doc. 4) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

14